```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>-against-<br><br>PEDRO GONZALEZ,<br><br>                  Defendant. | 03 CR 1310 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

    Before the Court is Defendant Pedro Gonzalez's petition pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release on account of COVID-19. (Dkt. No. 170 ("Motion").) The Government opposed (dkt. no. 175 ("Opposition")), and Defendant replied (dkt. no. 176 ("Reply")). For the reasons set out below, the motion is denied.

## I.   Background

    Pedro Gonzalez, now 50 years old and vaccinated, began selling marijuana in the Bronx, New York in the early 1990s. (PSR ¶ 13.) As Gonzalez's drug dealing business grew, he also began selling crack cocaine, powder cocaine, and heroin in large quantities. (Id. ¶ 14.) Gonzalez operated a high-volume drug business for more than a decade. (Id. ¶¶ 19-20, 22.) He had employees working 8-hour shifts, 24 hours a day, and 7 days a week selling drugs from a Bronx apartment. (Id. ¶ 15.)

Gonzalez earned millions of dollars from his drug business. (See Dkt. No. 124 ("Sentencing Transcript") at 8:17-22, 29:5-8.)

Violence was a major part of Gonzalez's drug operation. He was known to possess firearms, including a semiautomatic pistol, revolvers, and a grenade. (PSR ¶ 16.) Gonzalez and his associates were involved in multiple robberies and murders of rival drug dealers. (Id. ¶¶ 18, 19.)

Gonzalez was eventually arrested for drug trafficking in 2003. (Id. ¶ 26.) On October 1, 2007, he was convicted following a jury trial in the United States District Court for the Southern District of New York of (1) conspiracy to distribute with intent to distribute heroin; (2) distribution and possession with intent to distribute a heroin, and (3) distribution and possession with intent to distribute cocaine, in violation of Sections 846, 812, 841(a)(1), and 841(b)(1)(A) of Title 21 of the U.S. Code. (PSR ¶ 8.) Gonzalez was held responsible for conspiring to distribute over 20 kilos of crack cocaine, over 50 kilos of powder cocaine, "pounds of marijuana," and at least 3 kilos of heroin. (PSR ¶ 28.) On May 1, 2008, this Court sentenced the Defendant principally to concurrent sentences of 35 years imprisonment on each of the three counts. (See Dkt. No. 120 ("Judgment") at 2.)

Gonzalez has been incarcerated since October 2, 2003, and has served over 18 years of a 35-year sentence; his projected

release date is October 23, 2033.  (Exhibit B to Opposition, Sentence Monitoring Computation Data [dkt. no. 175-2].) Gonzalez is 50 years old and is housed at FCI Fort Dix, which presently has 0 confirmed active cases of COVID-19 among inmates and staff.[1]  Gonzalez suffers from type 2 diabetes, and he was diagnosed with COVID-19 and pneumonia in February 2021, but has since recovered.  (Exhibit A to Opposition, Gonzalez Medical Records, June 2020 to June 2021, at 18, 25-26 [dkt. no. 175-1].) After initially refusing the COVID-19 vaccine in January 2021, Gonzalez was eventually vaccinated; he received the second dose of the Pfizer COVID-19 vaccine on June 17, 2021.  (Id. at 98.)

Gonzalez made an initial request for compassionate release to the BOP on March 24, 2021.  The Warden did not grant Gonzalez's request, and instead requested that Gonzalez resubmit his request and select "extraordinary and compelling" category under the BOP Program Statement 5050.50.  (Exhibit B to Motion, Letter from Acting Warden Lamine N'Diaye to Michael J. Gilbert, dated Apr. 9, 2021 [dkt. no. 171-1].)  A second request for compassionate release was sent to the BOP on June 4, 2021. (Exhibit C to Motion, Letter from Michael J. Gilbert to Acting

---

[1] See Bureau of Prisons, COVID 19 Coronavirus, https://www.bop.gov/coronavirus/ (interactive case map) (last visited March 24, 2022).

3

Warden Lamine N'Daiye, dated June 4, 2021 [dkt. no. 171-1].) Accordingly, more than 30 days have passed since the Defendant's application to BOP for compassionate release. The Government concedes that the Defendant has exhausted his administrative remedies, as required under 18 U.S.C. § 3582(c). (Opposition at 2 n.2.)

## II. Applicable Law

Under 18 U.S.C. § 3582(c), as amended by the First Step Act, a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." Id. § 3582(c)(1)(A)(i).[2] A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of

---

[2] Although the First Step Act does not expressly address release to home confinement, a district court may reduce the defendant's sentence to time served, release the defendant to supervised release, and order home confinement as a condition of supervised release, so long as that additional time on supervised release "does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A); accord United States v. Park, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020).

4

the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. (emphasis added).  Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

To satisfy the requirements of sentence reduction pursuant to the compassionate release provision, the Defendant must demonstrate "extraordinary and compelling reasons."  The Second Circuit has held that the First Step Act of 2018 "allows [district] courts independently to determine what reasons, for purposes of compassionate release, are extraordinary and compelling" and that the BOP Director is no longer the sole arbiter in determining whether the threshold is met."  See United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.")  Courts may "look[] to § 1B1.13 for guidance in the exercise of [their] discretion, but [are] free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" United States v.

Rodriguez, No. 16-cr-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting Brooker, 976 F.3d at 237)).

Whether such "extraordinary and compelling reasons" exist, however, is only "[t]he threshold question." United States v. Daugerdas, No. 09-cr-581 (WHP), 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020). "[T]his Court's analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate release. This Court must also consider the factors set forth in section 3553(a)." Id. at *4 (cleaned up).

Those § 3553(a) factors include, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct; [and]
   (C) to protect the public from further crimes of the defendant . . . .

18 U.S.C. § 3553(a).

### III. Discussion

In attempting to demonstrate "extraordinary and compelling reasons" warranting release, Gonzalez relies on his prior pneumonia and COVID-19 diagnoses, his age and type 2 diabetes diagnosis, and the COVID-19 pandemic.

6

While Defendant's papers understandably concentrate on the then-current Delta variant of Covid, the most widespread variant today is the Omicron variant, widely reported to have less serious complications, especially for individuals, like Mr. Gonzalez, who are vaccinated.[3]  Thus, the danger of serious side effects to most individuals seems to have subsided somewhat.

Defendant argues that he is at greater risk because of his own type 2 diabetes diagnosis as well his history of family members who have died of diabetes-related complications.  (See Reply at 5-6.)  He notes that "if diabetes is not properly treated, organs including a person's heart, blood vessels, and nerves can be damaged."  (Id. at 6.)  Although Defendant dislikes the manner in which his diabetes is being treated,[4] there is no suggestion that his diabetes is not being treated. Indeed, his medical records demonstrate that he is being treated for all of his medical conditions.  (See Exhibit A to Opposition at 11-16 [dkt. no. 175-2].)

Defendant also relies on having a weakened immune system, but, as the Government points out, nothing in his medical

---

[3] See, e.g., Nathaniel Weixel, Fauci:  Early data show omicron not as severe as delta for the vaccinated, THE HILL (Dec. 29, 2021), https://thehill.com/policy/healthcare/587624-fauci-early-data-show-omicron-not-as-severe-as-delta-for-the-vaccinated.

[4] For example, Defendant complaints about the medication provided and having to "resort to manual insulin delivery."  (Reply at 6-7.)

7

records indicates his being immunocompromised.  (See Opposition at 5; see also Exhibit A to Opposition at 1-4.)  Indeed, as noted above, Defendant has recovered, without hospitalization, from COVID-19 and pneumonia.  Accordingly, Defendant's age and medical conditions do not demonstrate "extraordinary and compelling circumstances" warranting release.  They also do not come within the Application Note to Section 1B1.13 of the Guidelines.  Mr. Gonzalez is 50 years old, not over the age of 65, and he has only served a little more than 50% of his sentence, not 75%.  See U.S.S.G. § 1B1.13, Application Note 1(B).

Finally, even if Defendant had demonstrated "extraordinary and compelling circumstances," the section 3553(a) factors counsel against release.  His crimes were extremely serious.  As noted above, Defendant was the leader of a high-volume drug-trafficking organization for more than a decade.  (PSR ¶¶ 19-20, 22.)  He possessed firearms and, with his associates, participated in multiple robberies and murders of rival drug dealers.  (Id. ¶¶ 16, 18-19.)  He was held responsible for over 20 kilos of crack cocaine, over 50 kilos of powder cocaine, "pounds of marijuana," and at least 3 kilos of heroin--all with a value of a million dollars.  At sentencing, the Court found the quantities and dollar amount to be "conservative" in light

8

of the Defendant's "unexplained wealth." (See Sentencing Transcript at 29:5-8.)

Nevertheless, the Court found that the prescribed Guidelines sentence of life was greater than what was necessary to meet the 3553(a) factors and instead sentenced Defendant to 35 years. In light of the seriousness of his crimes, especially the use of firearms for robberies and murders and the Defendant's leadership role in the long-running and lucrative drug-trafficking operation, that sentence is just as needed today as it was in 2007 to protect the public from further crimes of this Defendant.

## IV. Conclusion

For the reasons set out above, the Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) (dkt. no. 170) is denied.

The Clerk of the Court is directed to close the open motion (dkt. no. 170) and to mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:   March 24, 2022
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

9